## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **The Pastry Portal Inc.** | : | |
| c/o Ice Miller LLP | : | |
| 250 West Street, Suite 700 | : | |
| Columbus, Ohio 43215 | : | |
| | : | **JURY DEMAND** |
| Plaintiff | : | **ENDORSED HEREON** |
| v. | : | |
| | : | |
| **Elizabeth Siefke** | : | Case Number: |
| 7441 Sheelin Court | : | |
| Dayton, OH 45415-1147 | : | |
| and | : | Judge |
| | : | |
| **Macey Van Schaik aka Macey** | : | |
| **Pennington** | : | |
| 1230 Sunset Drive | : | |
| Englewood, OH 45322-2264 | : | |
| and | : | |
| | : | |
| **Stephanie Perkins** | : | |
| 144 Elmwood Drive | : | |
| Springboro, OH 45066-1502 | : | |
| and | : | |
| | : | |
| **Noah Pennington** | : | |
| 1230 Sunset Drive | : | |
| Englewood, OH 45322-2264 | : | |
| and | : | |
| | : | |
| **Jane Doe No. 1** | : | |
| (Name and Address Unknown) | : | |
| and | : | |
| | : | |
| **Jane Doe No. 2** | : | |
| (Name and Address Unknown) | : | |
| and | : | |
| | : | |
| **Jane Doe No. 3** | : | |
| (Name and Address Unknown) | : | |
| and | : | |
| | : | |

4882-9151-8052.4

**Jane Doe No. 4**                          :
(Name and Address Unknown)
              and          :
                                             :

**Jane Doe No. 5**                          :
(Name and Address Unknown)
              and          :
                                             :

**Jane Doe No. 6**                          :
(Name and Address Unknown)                  :
              and          :
                                             :

**John Doe No. 1**                          :
(Name and Address Unknown)                  :
              and          :
                                             :

**John Doe No. 2**                          :
(Name and Address Unknown)                  :
              and          :
                                             :

**John Doe No. 3**                          :
(Name and Address Unknown)                  :
              and          :
                                             :

**John Doe No. 4**                          :
(Name and Address Unknown)                  :
              and          :
                                             :

**John Doe No. 5**                          :
(Name and Address Unknown)                  :
              and          :
                                             :

**John Doe No. 6**                          :
(Name and Address Unknown)                  :
                                          :
                    Defendants.          :
_____

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF INCLUDING COMPENSATORY MONEY DAMAGES AND PUNITIVE DAMAGES

       Plaintiff, The Pastry Portal Inc. ("The Pastry Portal"), by and through its legal counsel and

for its Complaint against Defendants Elizabeth Siefke ("Defendant Siefke"), Macey Van Schaik

aka Macey Pennington ("Defendant Van Schaik"), Stephanie Perkins ("Defendant Perkins"), Noah Pennington ("Defendant Pennington"), Jane Doe No. 1, Jane Doe No. 2, Jane Doe No. 3, Jane Doe No. 4, Jane Doe No. 5, Jane Doe No. 6, John Doe No. 1, John Doe No. 2, John Doe No. 3, John Doe No. 4, John Doe No. 5, and John Doe No. 6 (collectively, "Defendants"), states as follows:

## NATURE OF THE ACTION

1.      Defendants, strategically and willfully have engaged in a sudden and unprovoked attack on The Pastry Portal to defame and commercially disparage the business in its opening weeks, and to induce, directly or indirectly, patrons of The Pastry Portal to not engage in business with The Pastry Portal. Upon information and belief, Defendants have also contacted neighboring businesses of The Pastry Portal and its hometown of Abbotsford, Canada in an effort to further sully the reputation of and the goodwill earned by The Pastry Portal, including its owners, in the community.

2.      Defendants have used their social media platforms, including Facebook, Instagram, TikTok, and Google, to broadcast false information regarding The Pastry Portal, including publishing unfounded 1-star reviews to cause harm on The Pastry Portal.

3.      Defendants' postings also call for support from their followers to further cyberbully The Pastry Portal for no legitimate reason.

4.      Through this conduct, Defendants and others have civilly conspired, intentionally, tortiously, and without privilege interfered with, intentionally commercially disparaged and defamed, and have participated in unfair competition against The Pastry Portal.

5.      The Pastry Portal files the instant lawsuit to obtain all available equitable and legal relief as set forth herein.

4882-9151-8052.4

## PARTIES, JURISDICTION, AND VENUE

6.    Plaintiff The Pastry Portal Inc. is a Canadian corporation with its principal place of business in Abbotsford, British Columbia, Canada.

7.    Defendant Elizabeth Siefke is an individual who is a citizen and resident of Ohio.

8.    Defendant Macey Van Schaik is an individual who is a citizen and resident of Ohio.

9.    Defendant Stephanie Perkins is an individual who is a citizen and resident of Ohio.

10.    Defendant Noah Pennington is an individual who is a citizen and resident of Ohio.

11.    Upon information and belief, Jane Doe No. 1, Jane Doe No. 2, Jane Doe No. 3, Jane Doe No. 4, Jane Doe No. 5, Jane Doe No. 6, John Doe No. 1, John Doe No. 2, John Doe No. 3, John Doe No. 4, John Doe No. 5, and John Doe No. 6 are individuals who are citizens and residents of Ohio.

12.    Personal jurisdiction is proper in this Court over Defendants because they live and/or work in Ohio and/or are permanent Ohio residents.

13.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different countries and because the amount in controversy exceeds $75,000 exclusive of interests and costs.

14.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because this Court is in the judicial district in which Defendants reside, and all Defendants are residents of the State of Ohio.

## BACKGROUND FACTUAL ALLEGATIONS

### The Pastry Portal

15.    The Pastry Portal is an upscale Canadian bakery selling high quality pastries and beverages.

4

16.     The Pastry Portal's primary place of business is the small Canadian town of Abbotsford, British Columbia, Canada.

17.     After its current owners invested significant sums to open the bakery, the Pastry Portal opened its doors on April 7, 2023, and had immediate success. Its opening week's revenue exceeded its expectations.

18.     The Pastry Portal has designed its business for a social media following and relies on social media to attract and maintain customers.

19.     It consistently posts on its social media regarding its products, promotions, news, and updates.

20.     The bakery is decorated with paintings and stuffed animals and is designed to give an open community feeling with a memorable ambience, one that is intended to be shared on social media liberally as depicted in the following true and accurate photographs depicted the bakery's interior and products:

 

 

21.     The Pastry Portal often celebrates holidays by offering specialty pastries and displaying them on its social media pages.

22.     The Pastry Portal participates in sales and hosts special events for holidays, including those for Mother's Day, which are also advertised through social media and lead to increased sales for the bakery and, absent unlawful conduct, generate increased revenue for The Pastry Portal.

23.     The Pastry Portal also relies on the neighboring businesses in Abbotsford to recommend its shop to locals, tourists, and others.

24.     The Pastry Portal plans to grow its business and open additional locations in Canada and the United States when its projected popularity and sales grow, which it anticipates to occur in no small part through its carefully curated and branded social media campaigns.

**Defendants' Social Media Barrage**

25.     Upon information and belief, after years of investigation, Defendant Siefke discovered the personal relationship between one of the current owners of The Pastry Portal and

6

their business and one of Defendant Siefke's ex-husbands. Upon information and belief, Defendant Siefke and the other Defendants then commenced a scheme to libel and slander The Pastry Portal and its operations and otherwise unlawfully disparage its business during its vulnerable opening weeks.

26.    Beginning on Sunday, May 7, 2023, Defendant Siefke, along with the enlisted support of Defendant Van Schaik, Defendant Perkins, Defendant Pennington, and other John and Jane Does, commenced their coordinated social media attack. They have published false negative reviews of The Pastry Portal and other aspersions on various social media platforms, including TikTok, Facebook, Google, and Instagram.

27.    Upon information and belief, Defendant Siefke, Defendant Van Schaik, Defendant Perkins, and Defendant Pennington are related either by blood, marriage, or other familial status.

28.    Upon information and belief, Defendants use the following social media identifiers:

a.    Defendant Siefke uses the TikTok handle, @makeupandmorewith_liz76, the Google name, @Liz Siefke, Liz Siefke, on Facebook, and the Instagram handle, liz_siefke76.

a.    Defendant Van Schaik uses the Instagram handle, @macefloww.

b.    Defendant Perkins uses the Google name Stephanie Perkins.

c.    Defendant Pennington uses the Google name Noah Pennington.

d.    Defendants John and Jane Does use the names "Heidi Bisel," "Jessica F," "christyann2444," "Jessica Bates," "Labor of Love Creations," "Double Freezd," "who knows," "The LoneRanger," "Taylar Wasch," "Landon St. James," and "Drew Webb."

29.    Upon information and belief, Defendant Siefke now "follows" The Pastry Portal's social media account(s), The Pastry Portal's customers social media account(s), various Canadian tourism accounts, including Downtown Abbotsford's account, and Canadian "influencers," for the

purpose of monitoring posts and responding with disinformation, untrue negative reviews, and false statements about to The Pastry Portal, including its owners.

30.     Upon information and belief, as recently as May 9, 2023, Defendant Siefke has made efforts to identify The Pastry Portal's employees as part of her ongoing cyberbullying of The Pastry Portal. In furtherance of these efforts, she has requested to "follow" at least one of The Pastry Portal employees on social media

31.     Defendant Siefke has posted for her 16,000 followers on TikTok aggressive and threatening videos about The Pastry Portal. True and accurate copies of screenshots of the respective posts on Defendant Siefke's TikTok account are attached hereto as **Exhibit 1**. True and accurate recordings of the TikTok videos in full length are provided in **Exhibit 2** and will be manually filed with the Court with permission.



*See* Ex. 1, at p. 1.

32.     Defendant Siefke's TikTok videos are filled with information intended to disparage The Pastry Portal and its operations.

33.     Defendant Siefke has used identifying hashtags, including #thepastryportal, #downtownabbotsford, #canada, and #abbotsford. Upon information and belief, Defendant Siefke used these hashtags to cause her viewers to associate her content with The Pastry Portal, to garner a social following for her stratagem, and to facilitate and to expedite the spread of the disinformation.

34.     Defendant Siefke also "follows" the #pastryportal hashtag on Instagram.

35.     Defendant Siefke also posted a video displaying herself with her middle finger raised with negative language related to The Pastry Portal. *See* Ex. 2-B.

36.     Defendants Siefke's posts violate TikTok's use terms which specifically prohibit a user from intimidating or harassing another or posting any material that is designed to antagonize, bully, harm, distress, or upset another person. See TikTok's Terms of Services for users having their usual residence in the United States, at § 5, which states, "You may not . . . intimidate or harass another . . . [, post] any material which is defamatory of any person, obscene, offensive, [ ] hateful[,] or inflammatory [or] any material that is deliberately designed to provoke or antagonise people, especially trolling and bullying, or is intended to harass, harm, hurt, scare, distress, embarrass or upset people," available at https://www.tiktok.com/legal/page/us/terms-of-service/en, last accessed on May 14, 2023.

37.     In addition, Defendant Siefke also navigated to The Pasty Portal's Google Review page to post misleading and disparaging reviews of The Pastry Portal and its products. Specifically, she left one-star reviews and derogatory comments directed at The Pastry Portal. True and accurate copies of The Pastry Portal's Google Reviews are attached hereto as **Exhibit 3**. For example, Defendant Siefke provided false one-star review along with threatening comments:



*See* Ex. 3, at p. 1.

38.     This content violates Google's user policies, which prohibit content that is inaccurate and distorts the truth. Google does not allow users to post "misrepresentations" or "misinformation."[1]  Google requires contributions to reflect a genuine experience at a place or business, does not allow "fake engagement," and bans "content that is not based on a real experience and does not accurately represent the location or product in question."[2] Google.Com, "Prohibited and restricted content," available at https://support.google.com/local-guides/answer/7400114?hl=en#zippy=, last accessed May 14, 2023.

39.     Defendant Siefke's Instagram comments contained disparaging, defaming, factually incorrect and misleading information about The Pastry Portal and its owners. Defendant Siefke made these comments directly to The Pastry Portal's customers on their respective Instagram accounts. True and accurate copies of Defendant Siefke's Instagram comments are attached hereto as **Exhibit 4**. For example, Defendant Siefke posted the following comments:

---

[1] Google defines misrepresentation as "misleading representations or omissions for the purpose of gaining improper benefit." *See* Glossary, Google.Com, "Misrepresentation," available at https://support.google.com/contributionpolicy/answer/11409462?hl=en&ref_topic=11410564, last accessed May 14, 2023.
Google defines misinformation as "false or inaccurate information that may cause significant harm to individuals, businesses, or society." *See* Glossary, Google.Com, "Misinformation," available at https://support.google.com/contributionpolicy/answer/11411081?hl=en&ref_topic=11410564&sjid=12140508202230495063-NA, last accessed May 14, 2023.
[2] Google defines fake engagement as "content that does not represent a genuine experience." *See* Glossary, Google.Com, "Face engagement," available at
https://support.google.com/contributionpolicy/answer/11414422?hl=en&ref_topic=11410564&sjid=12140508202230495063-NA, last accessed May 14, 2023.

4882-9151-8052.4



*See* Ex. 4, at pp. 1–2.

40.    Defendant Siefke has posted multiple times on The Pastry Portal's customer's Instagram pages. These posts have become increasingly aggressive and sinister. For example, one Instagram post directed at the owner of The Pastry Portal stated, "You can run but you can't hide."

41.    On information and belief, other people have also posted on social media in support of Defendant Siefke's plan to unlawfully take down The Pastry Portal.

42.    For example, Defendant Van Schaik also posted on Instagram, falsely accusing The Pastry Portal's owner of wishing her ill will. Defendant Van Schaik's relevant Instagram comments are also included in Exhibit 4. The following are examples of Defendant Van Schaik's posts:



*See* Ex. 4, at p. 4.

43.    The Instagram activity set forth herein violates Instagram's Terms and Policies. Instagram forbids its users from doing anything misleading and requires them to follow the Community Guidelines, available at https://help.instagram.com/477434105621119/?helpref=uf_share, last accessed May 14, 2023. As part of its terms, Instagram does not allow its users to solicit fake and misleading user reviews or ratings. *Id.*

44.    Defendant Perkins also left a 1-star Google Review whereby she first provided her identity and then added additional, similar comments to those of Defendant Van Schaik. Ex. 3, at p. 2. Through this conduct, Defendant Perkins also violated Google's review policy.

45.    Defendant Pennington also left a 1-star Google Review. Ex. 3, at p. 9. Through this conduct, Defendant Pennington also violated Google's review policy.

**Defendants' Call to Arms**

46.    Defendant Siefke's social media posts contained various calls to action in violation of the platform's use terms.

47.    For example, in one TikTok video broadcasted to the 16,000 followers, Defendant Siefke states, "You guys should read the reviews for this company up here [(referring to The Pastry Portal)] . . . [T]his is in Abbotsford, British Columbia, Canada. We like that your pastry page has the address and phone number on it. That's all I'm going to say." Ex. 2-E. Upon information and belief, Defendant Siefke's video references the false Google Reviews that Defendants provided.

48.    Defendants Siefke claim that she "like[s]" that The Pastry Shop has posted its "address and phone number" has led to safety and security concerns by The Pastry Portal.

49.    In another video, Defendant Siefke sarcastically encouraged viewers to "circle her latest video" and "find The Pastry Portal and give them wonderful reviews." *See* Ex. 2-C. In other

14

social media postings, she directed and egged on her readers to "watch" and "repost" her post. *See* Ex. 2-E.

50. Upon information and belief, this "call to action" tactic worked as subsequent to these postings, further Google Reviews were posted, including by Jane Doe Nos. 1–6 and John Doe Nos. 1–6. The following posts further spread the false and misleading information by providing 1-star reviews, stating the "owners are horrible people," asking people to not support the business, stating that the pastries are worse than The Pastry Shop, and claiming the owner is a "horrible person" and "supports child abandonment."

51. Examples of true and accurate copies of reviews from John and Jane Does are also included in Exhibit 3 and depicted, in part, below:





*See* Ex. 3, pp. 4–7.

52. John and Jane Does' online activity violates Google's user policies.

**Defendants' Scheme To Sully The Pastry Portal's Name With Its Town and Neighbors**

53. Upon information and belief, Defendants contacted Abbotsford and other Abbotsford local businesses regarding The Pastry Portal.

16

54.     Upon information and belief, Defendants expressed the same misinformation to Abbotsford and those Abbotsford businesses as they shared and posted online.

55.     For example, Defendant Siefke posted on Downtown Abbotsford's Facebook page spreading further disinformation regarding The Pastry Portal and casting the same aspersions against the owners of The Pastry Portal. Attached is a true and accurate copy of the Facebook posts are attached hereto as **Exhibit 5**. *See* Ex. 5, at p. 2 (depicting the post on Downtown Abbotsford's Facebook page).

56.     The Abbotsford businesses have since expressed concern to The Pastry Portal as a result of the conduct described herein.

57.     The Pastry Portal's relationships and prospective relationship with Abbotsford and the other Abbotsford businesses are critical to The Pastry Portal's success because it is a new business and Abbotsford is a small town with a closely-tied community.

**The Toll on The Pastry Portal's Business**

58.     This cyberbullying has taken a toll on The Pastry Portal's business.

59.     The Pastry Portal attracts customers to its business through its social media presence, including through Instagram, Google, TikTok, and Facebook. The Pastry Portal also relies on accurate reviews to develop its business operations and positive reviews to secure future customer. For example, The Pastry Portal often posts on its Instagram page with images of its unique pastries and beverages. *See supra*.

60.     The Pastry Portal also posts images about holiday pastries and upcoming sales campaigns on its various social media platforms.

61.     Ever since the barrage of social media disparagement against The Pastry Portal, The Pastry Portal limited its posts on social media and have hidden its Instagram account, for fear

that Defendants and their followers will post additional unlawful content. The Pastry Portal's Instagram account is now private:



Defendants' actions threaten the safety and security of The Pastry Portal, its owners, its customers, their families and others in Abbotsford. Most concerning are the posts soliciting additional information related to The Pastry Portal and identifying the driving distance between Dayton, Ohio, United States and Abbotsford, British Columbia, Canada. Upon information and belief, Defendant Siefke specifically directs her 16,000 followers to the name and the address of The Pastry Portal to bully and to scare The Pastry Portal and those associated to it.

**The Ongoing Harm to The Pastry Portal**

62.     These cyberattacks have occurred during The Pastry Portal's critical opening weeks and the week of a marketing push for the Mother's Day holiday.

63.     Defendants' repeated and ongoing bad acts have caused or could cause irreparable injury to The Pastry Portal. Upon information and belief, Defendants have caused or may cause The Pastry Portal to lose customers and their actions have led or may lead to the confusion of existing and potential customers.

64.     Upon information and belief, The Pastry Portal customers and prospective customers have been or may be misled regarding the quality of The Pastry Portal's services and goods, the character of its owners, and the safety of visiting The Pastry Portal.

65.     Upon information and belief, The Pastry Portal has lost customers and has not garnered new prospective customers as a result of Defendants' actions.

66.     Due to these unprovoked attacks, The Pastry Portal has been unable to freely use its community-driven social media presence to market its products to potential customers and business partners due to ongoing nature of the threat of Defendants' cyberbullying.

67.     In addition, Defendants' repeated and ongoing bad acts have caused financial injury to The Pastry Portal.

### May 9, 2023, Cease-And-Desist Letter

68.     In response to Defendants' conduct, on or around May 9, 2023, The Pastry Portal sent Defendant Siefke a letter articulating Defendants' violations of applicable law and demanding Defendant Siefke cease and desist from engaging in any further unlawful conduct and to tell the other Defendants and any others to do the same. A true and accurate copy of the May 9, 2023, letter ("May 9, 2023 Letter") is attached hereto as **Exhibit 6**.

69.     Defendants have taken limited action to redress their actions following receipt of the May 9, 2023 Letter.  In fact, right after confirming receipt of the May 9, 2023 Letter, Defendant Siefke posted a video on TikTok referring to "their toxic behavior" and "their disrespect," clear references to The Pastry Portal, further defaming The Pastry Portal. Attached as **Exhibit 7** is a true and accurate recording of the March 12, 2023, TikTok Video.

### COUNT I – DEFAMATION AND/OR DEFAMATION *PER SE* (ALL DEFENDANTS)

70. The Pastry Portal repeats, realleges, and incorporates all paragraphs of the Complaint as if fully stated herein.

71. Defendants made false and defamatory statements in writing and through spoken statements about The Pastry Portal and its owners on various social media platforms.

72. Defendants' false and defamatory statements about The Pastry Portal were published without privilege to third parties.

73. Defendants' actions caused special harm to The Pastry Portal and also amount to defamation *per se* because the published statements stated that The Pastry Portal, including its owners, is not competent in its business affairs.

74. Upon information and belief, Defendants' false and defamatory statements about The Pastry Portal were made and published with actual malice and/or negligence.

75. Upon information and belief, Defendants have acted with actual malice because their actions were conducted with anger, hatred, ill will, a spirit of revenge, or a reckless disregard of the consequences or the legal rights of The Pastry Portal. Defendants knew the content of their social media posts and Google reviews was false and, upon information and belief, provided the posts and reviews with actual malice against The Pastry Portal due to a perceived relationship between one of the owners and one of Defendant Siefke's ex-husbands.

76. As a direct and proximate result of Defendants' acts, The Pastry Portal has suffered, and will continue to suffer, immediate, substantial, and irreparable harm.

77. The Pastry Portal has no adequate remedy at law.

78. Monetary damages alone will not be sufficient to remedy all of the harm caused to The Pastry Portal by Defendants' acts.

79.     Additionally, as a direct and proximate cause of Defendants' interference with The Pastry Portal's business, The Pastry Portal has suffered, and continues to suffer direct, consequential, and incidental damages in excess of $75,000 in an amount to be determined at trial.

80.     The Pastry Portal is also entitled to punitive damages to the maximum allowable under Ohio law to be determined at trial.

## COUNT II – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS (ALL DEFENDANTS)

81.     The Pastry Portal repeats, realleges, and incorporates all paragraphs of the Complaint as if fully stated herein.

82.     The Pastry Portal was and continues to be in a business relationship and/or a prospective business relationship with its customers, the town, and its neighboring businesses, as well as with various social media platforms where The Pastry Portal seeks to spread the word about its bakery products.

83.     Upon information and belief, Defendants had knowledge of the business relationships and/or the prospective business relationships The Pastry Portal had with its customers, its hometown, its neighboring businesses, and its social media platforms.

84.     Defendants intentionally, improperly, and without privilege or justification, interfered with these business relationships as set forth herein.

85.     Upon information and belief, Defendants acted with the malicious intention of interfering with, procuring the breach of, or terminating The Pastry Portal's business relationships.

86.     As a direct and proximate result of Defendants' acts, The Pastry Portal has suffered, and will continue to suffer, immediate, substantial, and irreparable harm.

87.     The Pastry Portal has no adequate remedy at law.

88.     Monetary damages alone will not be sufficient to remedy all of the harm caused to The Pastry Portal by Defendants' acts.

89.     Additionally, as a direct and proximate cause of Defendants' interference with The Pastry Portal's business, The Pastry Portal has suffered, and continues to suffer direct, consequential, and incidental damages in excess of $75,000 in an amount to be determined at trial.

90.     The Pastry Portal is also entitled to punitive damages to the maximum allowable under Ohio law to be determined at trial.

## COUNT III – UNFAIR COMPETITION
## (ALL DEFENDANTS)

91.     The Pastry Portal repeats, realleges, and incorporates all paragraphs of the Complaint as if fully stated herein.

92.     Defendants' actions have caused considerable customer confusion regarding The Pastry Portal.

93.     Alternatively, Defendants' circulation of false information and rumors regarding The Pastry Portal's owners maintains a claim for unfair competition.

94.     As a direct and proximate result of Defendants' acts, The Pastry Portal has suffered, and will continue to suffer, immediate, substantial, and irreparable harm.

95.     The Pastry Portal has no adequate remedy at law.

96.     Monetary damages alone will not be sufficient to remedy all of the harm caused to The Pastry Portal by Defendants' acts.

97.     As a direct and proximate result of Defendants' unfair competition, The Pastry Portal has suffered, and continues to suffer direct, consequential, and incidental damages in excess of $75,000 in an amount to be determined at trial.

## COUNT IV – CIVIL CONSPIRACY

4882-9151-8052.4

**(ALL DEFENDANTS)**

98.     The Pastry Portal repeats, realleges, and incorporates all paragraphs of the Complaint as if fully stated herein.

99.     Upon information and belief, each of Defendants knew that they engaged in the unlawful conduct set forth herein.

100.     Despite this knowledge, Defendants participated in a malicious combination involving two or more persons, a result of which was the commission of a wrongful or unlawful acts described harm that caused damages to The Pastry Portal.

101.     In particular, Defendants initiated a social media, online scheme, and disinformation subterfuge to damage, commercially disparage, and disrupt and taint The Pastry Portal's business relationships with customers, future customers, its town, other businesses, and the social media platforms.

102.     Defendants worked together in order to effectuate these acts.

103.     The conspiracy involved the tortious actions, as alleged above, by Defendants and other parties to harm The Pastry Portal.

104.     In addition, each Defendant committed an unlawful act independent from the actual conspiracy as set forth above.

105.     The Pastry Portal has no adequate remedy at law.

106.     Monetary damages alone will not be sufficient to remedy all of the harm caused to The Pastry Portal by Defendants' acts.

107.     As a direct and proximate result of Defendants' conduct, The Pastry Portal has suffered, and continues to suffer direct, consequential, and incidental damages in excess of $75,000 in an amount to be determined at trial.

4882-9151-8052.4

**WHEREFORE**, The Pastry Portal respectfully requests that this Court issue judgment in its favor and against Defendants as follows:

A.    A temporary restraining order, preliminary injunction, and permanent injunction prohibiting Defendants from making any further false, malicious, and/or defamatory statements referring or relating to The Pastry Portal, including its owners and employees, to any third parties, now or in the future;

B.    Award direct, consequential, and incidental damages in favor of The Pastry Portal and against Defendants in an amount to be proven at trial, but not less than $75,000, together with interest, and other amounts permitted by law;

C.    Award punitive damages in the maximum amount allowable under Ohio law;

D.    Award The Pastry Portal all of its legal expenses including reasonable attorneys' fees and expert costs;

E.    Award The Pastry Portal pre-judgment interest, post-judgment interest, costs, disbursements, and expenses incurred in connection with this action; and

F.    All other legal and equitable relief that this Court may deem just and proper under the circumstances.

(SIGNATURE OF COUNSEL ON THE FOLLOWING PAGE.)

4882-9151-8052.4

Respectfully submitted,

**ICE MILLER LLP**

_/s/ Kristina Dahmann_
Kristina Dahmann, _Trial Attorney_ (0096414)
Kishala Srivastava (0098807)
250 West Street, Suite 700
Columbus, Ohio 43215
(614) 462-2220
Kristina.dahmann@icemiller.com
Kishala.Srivastava@icemiller.com

Justin D. Swindells (_pro hac vice_ forthcoming)
200 W. Madison Street Suite 3500
Chicago, IL 60606-3417
(312) 726-8156
Justin.Swindells@IceMiller.Com

_Attorneys for Plaintiff The Pastry Portal Inc._

25

## REQUEST FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs The Pastry Portal Inc., by and through counsel, respectfully requests that all issues herein properly triable by jury be so tried.

_/s/ Kristina Dahmann_____
Kristina Dahmann (0096414)