UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**The Pastry Portal Inc.,**

    *Plaintiff,*

v.                                                           Case No. 3:23-cv-135
                                                                       Judge Thomas M. Rose

**Elizabeth Siefke, et al.,**

    *Defendants.*

---

**ENTRY AND ORDER FINDING THE NAMED PARTIES NOT TO BE DIVERSE AND DISMISSING COMPLAINT WITHOUT PREJUDICE. DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, DOC. 25, IS MOOT. THE COURT GRANTS PLAINTIFF'S ALTERNATE REQUEST FOR LEAVE TO FILE AN AMENDED COMPLAINT. DOC. 35. PLAINTIFF IS GRANTED UNTIL MARCH 27, 2024 TO FILE THE TENDERED AMENDED COMPLAINT.**

---

This matter is currently before the Court for consideration of whether the Court can exercise subject matter jurisdiction based on diversity. *See* 28 U.S.C. § 1332. The Court *sua sponte* entered an Order to Show Cause why the Court should not dismiss this action for lack of subject matter jurisdiction, particularly questioning the diversity of the parties. Doc. 33 at 2. Plaintiff filed Plaintiff the Pastry Portal Inc.'s Objection to Order to Show Cause and Response to Show Cause

Order and, in the alternative, Motion for Leave to Amend. Doc. 35. Defendants Elizabeth Siefke, Doc. 36, Noah Pennington and Macey Van Schaik (aka Pennington), Doc. 37, and Stephanie Perkins, Doc. 38, have filed their positions, raising an additional question concerning the amount in controversy.

On May 17, 2023, The Pastry Portal filed a Complaint against Defendants Elizabeth Siefke, Stephanie Perkins, Macey Van Schaik aka Macey Pennington, Noah Pennington, Jane Does 1-6 and John Does 1-6, asserting claims of defamation, tortious interference with business relationships, unfair competition, and civil conspiracy. Doc. 1.

The Pastry Portal opened its doors on April 7, 2023, and had immediate success. Doc. 1, at ¶ 17 The Pastry Portal designed its business to capitalize on a social media following and relies on social media to attract and maintain customers. *Id.* at ¶ 19.

The Pastry Portal alleges Defendants, led by Siefke, commenced an online cyberbullying campaign during a critical time during The Pastry Portal's opening weeks and months. *Id.* at ¶¶ 24–49 & 53–67. Siefke allegedly solicited the participation of unknown third parties through social media posts by posting a video to her 16,000 followers on TikTok asking them to "find The Pastry Portal." *Id.* at ¶¶ 43–49.

The Pastry Portal asserts it is an upscale Canadian bakery selling high quality pastries and beverages and a citizen of Abbotsford, British Columbia, Canada. *Id.* at ¶ 6, 15. Defendants are alleged to be citizens of Ohio. *Id.* at ¶¶ 7–10.

Plaintiff alleges Siefke learned one of her ex-husbands had married one of the owners of The Pastry Portal. *Id.* at ¶ 25. Siefke and the other Defendants then allegedly commenced libeling and slandering The Pastry Portal during its opening weeks. *Id.* ¶ 25. The thrust of

2

Defendants' alleged libel and slander is that Siefke's ex-husband abandoned Siefke and their children, failing to pay child support. Rather than seek enforcement of past due child support, see https://www.acf.hhs.gov/sites/default/files/documents/ocse/a_caseworkers_guide_to_processing_cases_with_canada.pdf, Siefke allegedly chose to pursue a path of harassment.

Beginning on Sunday, May 7, 2023, Siefke, along with the enlisted support of her relatives, Defendant Van Schaik, Defendant Perkins, Defendant Pennington, as well as some John and Jane Does, allegedly commenced a coordinated social media attack. *Id.* at ¶ 26. They have allegedly published false negative reviews of The Pastry Portal and other aspersions on social media platforms, including TikTok, Facebook, Google, and Instagram, in violations of the relevant terms of service. *Id.* at ¶ 26.

Siefke now allegedly follows The Pastry Portal's social media accounts, The Pastry Portal's customers' social media accounts, various Canadian tourism accounts, including Downtown Abbotsford's account, and Canadian influencers allegedly in order to monitor posts and respond with disinformation, untrue negative reviews, and false statements about The Pastry Portal and its owners.

On May 9, 2023, Siefke allegedly made efforts to identify The Pastry Portal's employees as part of the allegedly ongoing cyberbullying of The Pastry Portal, requesting to "follow" one of The Pastry Portal employees on social media. *Id.* at ¶ 30. Siefke has allegedly posted for her 16,000 followers on TikTok aggressive and threatening videos about The Pastry Portal. *Id.* at ¶ 32.

Siefke's posts have allegedly become increasingly aggressive and sinister. *Id.* at ¶ 40. For

3

example, one Instagram post directed at the owner of The Pastry Portal stated, "You can run but you can't hide." *Id.* at ¶ 41. Van Schaik also posted on Instagram, falsely accusing The Pastry Portal's owner of wishing her ill will. *Id.* at ¶ 42. Comments allegedly include, "Will you let my step mom know we are coming for her??" and "Imagine supporting child abandonment." *Id.* at ¶ 42.

Siefke's social media posts contained calls to action allegedly in violation of TikTok's use terms. *Id.* at ¶ 47. For example, in one TikTok video broadcasted to 16,000 followers, Siefke allegedly states, "You guys should read the reviews for this company up here [(referring to The Pastry Portal)] . . . [T]his is in Abbotsford, British Columbia, Canada. We like that your pastry page has the address and phone number on it. That's all I'm going to say." *Id.* at ¶ 47, Ex. 2-E. Siefke's claim that she "like[s]" that The Pastry Shop has posted its "address and phone number" has allegedly led to safety and security concerns by The Pastry Portal. *Id.* at ¶ 48. This "call to action" tactic is alleged to have worked as subsequent negative Google Reviews were posted, including by Jane Doe Nos. 1–6 and John Doe Nos. 1–6.

Next, Defendants allegedly contacted Abbotsford and other Abbotsford local businesses regarding The Pastry Portal. *Id.* at ¶ 53. Defendants allegedly expressed the same misinformation to Abbotsford and those Abbotsford businesses as they shared and posted online. *Id.* at ¶ 54. The Abbotsford businesses have since expressed concern to The Pastry Portal as a result of this conduct. *Id.* at ¶ 56.

The Pastry Portal claims the alleged cyberbullying has taken a toll on their business. *Id.* at ¶ 58. The Pastry Portal alleges it attracts customers to its business through its social media presence, including through Instagram, Google, TikTok, and Facebook. *Id.* at ¶ 59. The Pastry

Portal also relies on accurate reviews to develop its business operations and positive reviews to secure future customer. *Id.* The Pastry Portal's Instagram account is now private due to fears that Defendants' alleged actions threaten the safety and security of The Pastry Portal, its owners, its customers, their families, and others in Abbotsford.

Allegedly, as a result of her actions, unknown third parties then took actions in furtherance of Defendants' efforts to defame and disrupt The Pastry Portal's operations and business relationships. *Id*. at ¶¶ 50–51. The identities of these third parties are unknown. *Id.* The Pastry Portal refers to these parties as John and Jane Doe Defendants, describing them as "nominal parties" to the litigation. *Id.* "Upon information and belief, Jane Doe No. 1, Jane Doe No. 2, Jane Doe No. 3, Jane Doe No. 4, Jane Doe No. 5, Jane Doe No. 6, John Doe No. 1, John Doe No. 2, John Doe No. 3, John Doe No. 4, John Doe No. 5, and John Doe No. 6 are individuals who are citizens and residents of Ohio." *Id.* at ¶ 11.

The Pastry Portal intends to seek further information concerning the John and Jane Doe Defendants' identities and the actions that they may have taken that may constitute unlawful conduct similar to the conducted alleged by Defendants. Doc. 13.

On August 4, 2023, Magistrate Judge Caroline H. Gentry *sua sponte* issued an Order to Show Cause requesting The Pastry Portal to show cause "why the Court should not dismiss the action for lack of subject matter jurisdiction." Doc. 33 at PageID 279. The Order to Show Cause was issued in accordance with the duty of federal courts to examine cases before them whether subject-matter jurisdiction is appropriate:

> "[I]t is well established that federal courts are courts of limited jurisdiction, possessing only that power authorized by the Constitution and statute . . . , which is not to be expanded by judicial decree[.]" *Hudson v. Coleman*, 347 F.3d 138, 141 (6th Cir. 2003)

> (internal citations omitted). This Court has a duty to review *sua sponte* whether subject matter jurisdiction exists in each case before it. *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it."). See also Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). .
>
> Under 28 U.S.C. § 1332(a)(2), federal district courts "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of a State and citizens or subjects of a foreign state." Because "the presence of foreign parties on both sides of the dispute destroys the complete diversity required by [Section] 1332(a)(2)," *Akno 1010 Mkt. St. St. Louis Missouri LLC v. Nahid Pourtaghi*, 43 F.4th 624, 626-27 (6th Cir. 2022), this Court will lack jurisdiction if any foreign citizen is named as a Defendant.
>
> Further, because Plaintiff chose to file this lawsuit in this Court, it must shoulder the burden of alleging and proving the citizenship of every party. *Id.* at 627; *see also Ascent Mgmt., Inc. v. Shell Oil Co.*, 3:23-cv-0004, 2023 WL 4626959, at *2 (S.D. Ohio 2023) (Rose, D.J.) ("The party invoking federal[-]court diversity jurisdiction . . . has the burden of demonstrating by competent proof that the complete-diversity and amount-in[-]controversy requirements are met.") (internal citation omitted) (emphasis added).

Doc. 33, PageID 277-78.

Thus, Plaintiff must plausibly explain how a few posts on the internet amounted to at least $75,000 in damages while also dealing with the possibility that the John and Jane Does are not, like Plaintiff, foreign citizens.

**Analysis**

In a diversity action, "'the plaintiff must state all parties' citizenships such that the existence of complete diversity can be confirmed.'" *Vaughn v. Holiday Inn Cleveland Coliseum*, 56 F. App'x 249, 250 (6th Cir. 2003) (quoting *Chemical Leaman Tank Lines, Inc. v. Aetna Cas.*

6

*and Sur. Co.*, 177 F.3d 210, 222 n.13 (3d Cir. 1999)). "The party invoking federal[-]court diversity jurisdiction . . . has the burden of demonstrating by competent proof that the complete-diversity and amount-in[-]controversy requirements are met." *Ascent Mgmt., Inc. v. Shell Oil Co.*, 3:23-cv-0004, 2023 WL 4626959, at *2 (S.D. Ohio July 19, 2023) (internal citation and alterations omitted).

Thus, Courts both within and beyond the Sixth Circuit have held that "because the existence of diversity jurisdiction cannot be determined without knowledge of every defendant's place of citizenship, 'John Doe' defendants are not permitted in federal diversity suits." *Howell by Goerdt v. Tribune Entertainment Co.*, 106 F.3d 215, 218 (7th Cir. 1997). *See also*, e.g., *Rich & Rich P'ship v. Poetman Records U.S.*, 2008 WL 1868028, at *2 (E.D. Ky. April 24, 2008) ("the use of 'John Doe' defendants in a diversity action is not allowed"); *Healy v. Martinez- Rivera*, 2019 WL 13082980, at *2 (D.P.R. Jan. 25, 2019) ("[T]he majority view is that John Does are not permitted in diversity jurisdiction actions originally brought in federal court."); *Hai Yang Liu v. 88 Harborview Realty, LLC*, 5 F. Supp. 3d 443, 448-49 (S.D.N.Y. 2014) (collecting cases to the effect that "[Section] 1332 cannot be invoked where unidentified Doe defendants, integral to determining diversity jurisdiction, are named in the complaint."). Accordingly, the Court is not satisfied that it has subject-matter jurisdiction over this case. See, e.g., *China Basin Properties, Ltd. V. One Pass Inc.*, 812 F. Supp. 1038, 1039 ("The diversity statute is construed strictly and doubts are resolved against finding jurisdiction.").

Plaintiff emphasizes to the Court that Defendant Seifke and Defendants Macey Van Schaik also known as Macey Pennington, and Noah Pennington admit that they are Ohioans. Doc. 35,

7

PageID 294 (*citing* Doc. 27, at ¶ 3; Doc. 24, at ¶ 2). Defendant Stephanie Perkins does not contest the allegation that she is an Ohio citizen. *See* Doc. 25, PageID 229.

Plaintiff urges that the John and Jane Does Defendants are nominal defendants—nothing more than placeholders—and the Court should not consider their citizenship for purposes of diversity jurisdiction. Doc. 33 at PageID 279 (citing *Pain Ctr. of SE Indiana LLC v. Origin Healthcare Sols. LLC*, 893 F.3d 454, 459 (7th Cir. 2018). The exception of disregarding the citizenship of John Doe defendants, however, exists in the context of determining diversity in cases removed from state court, avoiding the difficulty of artfully pleaded complaints seeking to avoid diversity jurisdiction by including John Doe defendants. *See*, *e.g.*, *Wells Fargo Bank, Nat. Ass'n ex rel. N. Star Rel CDO IV v. Charlotte Overlook Apartments LLC*, No. 3:10-cv-411, 2011 WL 2293332 (W.D.N.C. June 7, 2011) ("Ultimately, the burden of demonstrating that the defendant is a nominal party rest with the removing party.") Here, Plaintiff chose to include John Doe parties potentially destroying diversity.

Even the Seventh Circuit precedent Plaintiff urges on the Court provides it no assistance. In the Seventh Circuit "because the existence of diversity jurisdiction cannot be determined without knowledge of every defendant's place of citizenship, 'John Doe' defendants are not permitted in federal diversity suits." *Howell v. Tribune Entm't Co.*, 106 F.3d 215, 218 (7th Cir. 1997). "According to *Howell* and its progeny, exceptions to the general rule exist: (1) as set forth above, naming a Doe defendant does not defeat a named defendant's right to remove a diversity case if its citizenship is diverse from the plaintiff's; (2) if the Doe defendant is merely a "nominal" party, it may be irrelevant to diversity jurisdiction; and (3) the domicile of a fugitive defendant

will be considered to be his domicile before he fled." *United Fin. Cas. Co. v. Lapp*, No. 12-cv-432, 2012 WL 7800838, at *6 (D. Colo. Oct. 12, 2012).

In identifying the second exception, the *Howell* opinion cites to *Moore v. General Motors Pension Plans*, 91 F.3d 848, 850 (7th Cir.1996). According to *Moore*, a fictitious party is "nominal" if the plaintiff includes the party in the complaint in the event that during discovery he identifies any additional defendants he wishes to add to the suit. *Id.* A fictitious party is not nominal, though, where the plaintiff knows that there are specific additional defendants he wishes to sue but cannot because he is uncertain as to their names. *Id.*; *United Fin. Cas. Co. v. Lapp*, No. 12-cv-432, 2012 WL 7800838, at *6 (D. Colo. Oct. 12, 2012).

Here, Plaintiff alleges that "Defendants John and Jane Does use the names 'Heidi Bisel,' 'Jessica F,' 'christyann2444,' 'Jessica Bates,' 'Labor of Love Creations,' 'Double Freezd,' 'who knows,' 'The LoneRanger,' 'Taylar Wasch,' 'Landon St. James,' and 'Drew Webb.'" Doc. 1. at ¶ 28(d). Plaintiff further alleges "Google Reviews were posted, including by Jane Doe Nos. 1–6 and John Doe Nos. 1–6. The following posts further spread the false and misleading information by providing 1-star reviews, stating the "owners are horrible people," asking people to not support the business, stating that the pastries are worse than The Pastry Shop, and claiming the owner is a "horrible person" and "supports child abandonment.'" *Id.* at ¶ 50.

The Pastry Portal knows that there are specific additional defendants it wishes to sue—i.e., those individuals that use the social media identifiers, "Double Freezd," "taylor wasch," "Landon St. James," "Drew Webb," "who knows," and "The Lone Ranger." Doc. 1 at ¶ 51. However, The Pastry Portal is simply uncertain as to their names. Accordingly, the John and Jane Does

9

Defendants are not nominal defendants, and the Court may not presume that the John and Joe Defendants are diverse.

Defendants each question whether the amount in controversy requirement of diversity has been met. "The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S. Ct. 586, 590, 82 L. Ed. 845 (1938); *see also Gissendanner v. RiverSource Life Ins. Co.*, No. 22-1577, 2023 WL 4564764, at *2 (6th Cir. July 17, 2023). The cases Defendants either cite for their positions involve cases removed from state court, where the removing party has a higher burden to meet when convincing a court that the amount in controversy has been met or involve requests for injunctions that are of indeterminate value. *See, e.g., Davis v. DCB Fin. Corp.*, 259 F. Supp. 2d 664, 675 (S.D. Ohio 2003) *and Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000)).

In its filing with the Court, Plaintiff requests permission to amend her complaint if the Court determines that her pleadings are deficient. Defendants Elizabeth Siefke questions whether amendment can give jurisdiction. Doc. 36.

Although "[t]he general rule is that diversity is determined at the time of the filing of a lawsuit," *Curry v. U.S. Bulk Transp., Inc.*, 462 F.3d 536, 540 (6th Cir. 2006), "an amended complaint supersedes all prior complaints." *Drake v. City of Detroit*, 266 F. App'x 444, 448 (6th Cir. 2008). "[W]hen a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Rockwell Int'l Corp.*

*v. United States*, 549 U.S. 457, 473–74 (2007). Therefore, the Court will analyze whether diversity exists at the time of filing of Plaintiff's Amended Complaint. *See Kendall v. Delong*, No. 3:20-cv-055, 2020 WL 2341159, at *4 (E.D. Tenn. May 11, 2020).

Because the named parties are not diverse, the Court **DISMISSES THE COMPLAINT WITHOUT PREJUDICE**. Defendant's Motion to Dismiss for Failure to State a Claim, Doc. 25, is **MOOT**. The Court grants Plaintiff's alternate request for leave to file an amended complaint. Doc. 35. Plaintiff is granted until March 27, 2024 to file the tendered amended complaint. Doc. 35-1. Absent timely compliance with this requirements, this action will be closed without further notice. Should Plaintiff choose to file the amended complaint, Defendant may renew her motion to dismiss.

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, March 21, 2024.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE